UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SASHA NICOLE PRINGLE,

          Petitioner,

vs.
                                 Case No. 3:20-cv-35-HES-PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

          Respondents.

_____

## ORDER

### I.  STATUS

Petitioner Sasha Nicole Pringle is proceeding on a pro se Petition Under 28 U.S.C. § 2254 by a Person in State Custody Pursuant to a State Court Judgment (Petition) (Doc. 1). She challenges a state court (Duval County) conviction for Driving Under the Influence (DUI) Manslaughter, Leaving the Scene of an Accident Involving Death, and Vehicular Homicide. Id. at 1. Respondents filed a Response (Response) (Doc. 4). Petitioner's Reply to Respondents' Response (Reply) (Doc. 6) followed.[1]

_____

[1] Respondents filed Exhibits (Doc. 4). The Court hereinafter refers to the exhibits as "Ex." The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced. For the Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing

Upon review, Petitioner's Judgment and Sentence is for two convictions: DUI Manslaughter and Leaving the Scene of a Crash Involving Death.   Ex. 8. She is serving concurrent sentences for fifteen and thirty years in prison, respectively.   Id.   The Court did not make an adjudication on count three, the vehicular homicide count, and held the matter in abeyance pursuant to an appeal.[2]  Ex. 7 at 226; Ex. 9 at 20.

Respondents calculate the Petition is timely filed pursuant to 28 U.S.C. § 2254(d).   Response at 20-21.   The Petition raises six grounds for habeas relief.   Respondents contend grounds one, three and five are procedurally defaulted because these grounds were not raised on direct appeal and all three grounds could have been raised on appeal.   Id. at 22.   Respondents also assert that Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the claims are not addressed on their merits. Id. at 23.   As such, they submit that grounds one, three and five should be dismissed with prejudice.   Id.

---

system.

[2]  Defense counsel argued Petitioner could not be adjudicated guilty of both DUI manslaughter and vehicular homicide.   Ex. 5 at 69.

2

## II.  EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle [her] to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

Of note, "[w]here a petitioner fails to allege sufficient facts to satisfy the prejudice prong of the Strickland[3] standard, it is unnecessary to hold an evidentiary hearing to resolve disputed facts relating to the allegedly deficient performance of trial counsel." Barksdale v. Dunn, No. 3:08-CV-327-WKW, 2018 WL 6731175, at *108 (M.D. Ala. Dec. 21, 2018) (not reported in F. Supp.)

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

3

(citing <u>Bester v. Warden</u>, 836 F.3d 1331, 1339-40 (11th Cir. 2016)), <u>cert. denied</u>, 2021 WL 1520857 (U.S. April 19, 2021) (No. 20-6498).   Furthermore, if the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.   <u>Martin</u>, 949 F.3d at 670 (quotation and citation omitted).   Here, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

## III.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that [she] is in custody in violation of the Constitution or laws or treaties of the United States." <u>Lee v. GDCP Warden</u>, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254).   For issues previously decided by a state court on the merits, this Court must review the underlying state-court decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).   In doing so, a federal district court must employ a very deferential framework.   <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential

framework of AEDPA for evaluating issues previously decided in state court),
cert. denied, 141 S. Ct. 2469 (2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019)
(per curiam) (recognizing AEDPA imposes "important limitations on the power
of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state
court's decision on the merits was 'contrary to, or involved an unreasonable
application of,' Supreme Court precedent, or 'was based on an unreasonable
determination of the facts in light of the evidence presented in the State court
proceeding.'" McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1364 (11th
Cir. 2021) (citing 28 U.S.C. § 2254(d)(1)-(2)), petition for cert. filed, (U.S. Aug.
27, 2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly
> established federal law if the state court either reaches
> a conclusion opposite to the Supreme Court of the
> United States on a question of law or reaches a
> different outcome than the Supreme Court in a case
> with "materially indistinguishable facts." Williams
> v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146
> L.Ed.2d 389 (2000).   "Under the 'unreasonable
> application' clause, a federal habeas court may grant
> the writ if the state court identifies the correct
> governing legal principle" from Supreme Court
> precedents "but unreasonably applies that principle to
> the facts of the prisoner's case." Id. at 413, 120 S. Ct.
> 1495.

Lee, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions where the state court's determinations are unreasonable, that is, if no fairminded jurist could agree with them.   McKiver, 991 F.3d at 1364.

This is a high hurdle, not easily surmounted.   If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'"   Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   See Hayes v. Sec'y, Fla. Dep't of Corr., No. 19-10856, 2021 WL 3747189, at *14 (11th Cir. Aug. 25, 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.   Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between

a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), petition for cert. filed, (U.S. Feb. 27, 2021) (No. 20-7589).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."   Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland standard."   Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021).   Pursuant to this standard, "a defendant must show that (1) [her] counsel's performance was

7

deficient and (2) the deficient performance prejudiced [[her] defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).   We need not address both prongs if a petitioner makes an insufficient showing on one prong.   Id. at 697, 104 S. Ct. 2052."   Fifield v. Sec'y, Dep't of Corr., 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam).

To prevail, a petitioner must successfully show her counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving [her] of a 'fair trial, a trial whose result is reliable.'"   Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687).   Additionally,

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.   Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).   Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."   Id.

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, 141 S. Ct. 1721 (2021).

## V.   GROUNDS ONE, THREE & FIVE

The doctrine of procedural default requires the following:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747-748, 111 S. Ct. 2546; Sykes,[5] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted her state court remedies.  Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  A procedural

---

4 Coleman v. Thompson, 501 U.S. 722 (1991).

5 Wainwright v. Sykes, 433 U.S. 72 (1977).

default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750).   To demonstrate cause, a petitioner must show some objective factor external to the defense impeded her effort to properly raise the claim in state court.   Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).   If cause is established, a petitioner must demonstrate prejudice.   To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."   Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if she satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).   The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction

of the actually innocent.   Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

Grounds one, three, and five could or should have been raised on direct appeal.   "[A] state prisoner seeking federal habeas corpus relief, who fails to raise [her] federal constitution claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."   Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir.) (citations omitted), cert. denied, 513 U.S. 1061 (1994).   Petitioner's appellate counsel filed an Anders[6] brief.   Ex. 9.   The record demonstrates Petitioner did not file a pro se brief on direct appeal, although given the opportunity to do so.   Ex. 10.   The First District Court of Appeal (1st DCA) affirmed per curiam. Ex. 11.   Any further attempts to seek relief in the state courts on these grounds will be unavailing.   As such, Petitioner has procedurally defaulted the claims.

As Petitioner is procedurally barred from raising these grounds, at this stage, she must demonstrate cause and prejudice.   Upon review, this Court

---

[6] Anders v. California, 386 U.S. 738 (1967).

concludes she has failed to show cause and prejudice.   She has also failed to show that failure to address these claims on the merits would result in a fundamental miscarriage of justice.   This Court finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence.

The Court finds grounds one, three and five are procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable.   As such, Petitioner is barred from pursuing grounds one, three and five in federal court.

## VI.   GROUND TWO

In ground two, Petitioner raises a claim of ineffective assistance of trial counsel for failure to object to witness testimony, including both expert and lay testimony.   Petition at 8-11.   In particular, Petitioner complains that her counsel allowed witnesses to express their opinions that Petitioner caused the crash or was at fault, invading the province of the jury.   Id. at 8.

Petitioner references the testimony of the state's expert witness, George Ruotolo, and his belief that Petitioner was at fault.   Id. at 9-10.   Petitioner also references Steven Kohn's statement in a 911 tape that Petitioner's actions caused the victim's vehicle to flip over.   Id. at 10.   Finally, Petitioner points to Mr. Kohn's testimony that he asked the officers if they were looking for the vehicle that caused the accident on the bridge.   Id.   Finally, Petitioner

complains that the prosecutor, in closing argument, reinforced these statements by referring to them without objection from defense counsel. Id. at 11.

As far as the question of exhaustion, Petitioner raised a comparable claim in ground one of her Rule 3.850 motions.[7] Ex. 13 at 9-10; Ex. 14 at 38-40. Applying the Strickland standard, the circuit court denied this ground. Ex. 16 at 51-55. Petitioner appealed the denial of post-conviction relief, and the 1st DCA summarily affirmed. Ex. 19. The mandate issued on June 11, 2019. Id.

The circuit court succinctly summarized Petitioner's allegation: "Defendant maintains counsel was ineffective for not objecting to testimony from the State's expert accident reconstruction witness and an eye-witness who both stated that Defendant veered into the victim's lane, causing the victim to swerve, lose control, and flip off the bridge." Ex. 16 at 52. The court proceeded to parse the expert's testimony, finding that the causation testimony was properly admitted into evidence, and therefore concluding, counsel could not be ineffective for failure to object. Id. at 52-53. Indeed, the court found that it was entirely proper for the expert to render an opinion as to the cause

---

[7] Post-conviction counsel filed Petitioner's initial Rule 3.850 motion. Ex. 12; Ex. 13. Petitioner proceeded pro se on her amended Rule 3.850 motion. Ex. 14; Ex. 15.

of the accident, noting that the jury certainly has the power to reject the expert's opinion and is not bound by an expert's conclusions.   Id. at 53.

A defense attorney need not lodge a meritless objection that would not have obtained relief, Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019). In failing to satisfy the performance prong of Strickland, Petitioner could not prevail on this claim of ineffective assistance of counsel.   Raheem, 2021 WL 1605939, at *6 (citation omitted) (failure to meet either prong is fatal to the claim).

As to the eye-witness opinion testimony, the circuit court also found no entitlement to relief that counsel performed deficiently in failing to object to Mr. Kohn's testimony.   Ex. 16 at 53.   The court opined that Mr. Kohn's testimony was proper because he could not have adequately testified as to the events without testifying in terms of his opinion.   Id. at 54.   Indeed, Mr. Kohn's account of the incident, the veering, swerving, and over-correction by the victim, all led to his assessment that Petitioner's veering into the victim's lane caused the victim to swerve and lose control.   Id.   The court concluded that Mr. Kohn, in order to properly convey his perception of the causal chain of events leading to the crash, necessarily needed to use "testimony in the form of an opinion."   Id.

The court further found Mr. Kohn's testimony did not mislead the jury or cause prejudice to Petitioner.   Id.   In making this determination, the court found Mr. Kohn's testimony consistent with the events he witnessed and the accident reconstruction of the expert.   Id.   In concluding there was no prejudice, the court noted that causation was readily apparent, and it mattered not that Mr. Kohn, a lay witness, said Petitioner "caused" the crash.   Id.

Finally, the court determined that Mr. Kohn's opinion, based on his observations, "did not require any specialized knowledge or experience."   Id. The court related that it was "common knowledge" that veering into someone else's lane will cause that individual to swerve to avoid contact, and potentially lead to loss of control of the vehicle.   Id.   The court opined Mr. Kohn was not attesting to a technical issue, but rather he related a matter of common sense. Id. at 54-55.

Based on the court's finding that Mr. Kohn's testimony was properly admitted, counsel could not be deemed ineffective for failure to object.   Indeed, counsel did not perform deficiently by failing to raise meritless objections.   See Hollis v. United States, 958 F.3d 1120, 1124 (11th Cir. 2020) (per curiam) (failure to raise meritless objection not constitutionally ineffective).   Here, the circuit court found that both the expert and lay witness testimony proper,

meaning an objection by counsel would neither be required nor successful. The 1st DCA affirmed.

In denying post-conviction relief, the trial court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected these claims based on Strickland.   Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry.   Furthermore, the 1st DCA affirmed.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   The Court finds the state court's adjudication of these claims is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.

As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair

and his counsel ineffective.[8]   Thus, Petitioner has failed to demonstrate a Sixth or Fourteenth Amendment violation under the United States Constitution.   The Court concludes Petitioner is not entitled to habeas relief on ground two of the Petition.

## VII.   GROUND FOUR

In his fourth ground for relief, Petitioner claims his counsel was ineffective for failure to hire a crash reconstructionist.   Petition at 15-18. Petitioner exhausted this claim by raising it in her post-conviction motions. Ex. 13 at 10-11; Ex. 14 at 40-42.   In denying this ground, the circuit court found that Petitioner had not satisfied the prejudice prong of <u>Strickland</u>.   Ex. 16 at 55-56.   Without satisfying the prejudice prong, a petitioner cannot prevail on a claim of ineffective assistance of counsel.

Here, Petitioner has failed to show there is a reasonable probability that the outcome of Petitioner's trial would have been different if counsel had hired and presented a crash reconstructionist.   The circuit court found that even if the victim was found to have over-corrected in her avoidance maneuver or to have been travelling at an excessive speed, that would not change "the but-for

---

[8] The Fourteenth Amendment provides any state shall not deprive any person of life, liberty, or property, without due process of law.   U.S. Const. amend. 14.   Petitioner, in her Reply, claims, due to counsel's poor performance as alleged in ground two, Petitioner was subjected to a violation of the right to a fair and impartial trial pursuant to the Fourteenth Amendment. Reply at 7.

and proximate cause of the accident[,]" Petitioner veering into the victim's lane. Id. at 55-56. Also, the circuit court found, even assuming Petitioner had called her own expert to testify concerning the lack of tire marks from Petitioner's car, it would not have made the slightest difference. Id. at 56. The state's expert already testified to that fact, but this did not negate the capability of Petitioner causing the accident by veering into the victim's lane. The circuit court found Petitioner's contention that all of the measurements and assessments by the police and the state's expert were wrong or inaccurate to be speculative and unsupported. Id. The court was also unpersuaded by Petitioner's proposal that an expert's diagram would have made such a difference that it would have persuaded the jury not to convict. Id. Finally, the court was unpersuaded by the vague and speculative contention that there was another possible cause for the accident. Id. In sum, the court found Petitioner "has not and cannot show prejudice[.]" Id.

As noted by the circuit court, Petitioner's contention that a crash reconstruction expert's testimony would have been helpful was nothing more than a conclusory allegation based on mere speculation. The trial court rejected Petitioner's claim of ineffective assistance of counsel for failure to hire an expert, finding the claims of prejudice speculative, conclusory, and wholly unpersuasive. Id. at 56.

18

Self-serving speculation is insufficient to sustain a claim of ineffective assistance of counsel.   See Morris v. Sec'y, Dep't of Corr., No. 8:07-CV-1830-T-27AEP, 2010 WL 5330505, at *7 (M.D. Fla. 2010) (not reported in F.Supp.2d) (based on the lack of any sworn affidavits or depositions from potential witnesses stating to what they would have testified, a petitioner fails to make the requisite factual showing and counsel's performance could not be deemed to be deficient).   Indeed, habeas relief is not warranted on the basis of tenuous speculation.

Upon review, the testimony at trial does not support Petitioner's contention that the victim was travelling at an excessive speed.   The witnesses who were positioned on the bridge did not attest to the victim's vehicle travelling at an excessive speed.   It is undisputed that Petitioner's car did not leave tire or other marks on the roadway.   Ex. 4 at 71.   The data recorder from the victim's car was corrupted by the water; therefore, no expert would be able to review and consider that data.   Id. at 72-73.   Mr. Ruotolo, the state's expert, admitted he could not "evidence" common contact points between the two vehicles.   Id. at 102.   He readily admitted that based on what was documented by the Florida Highway Patrol (FHP), which is what the experts have to work with after the fact, there was no physical evidence of the second vehicle's involvement in the collision.   Id. at 103.   Instead, he relied

19

upon Mr. Kohn's description of the incident, the photographs, and measurements as to the dynamics of the crash. Id. at 103-104. The expert stated, for his analysis, he does not have the vehicles actually touching. Id. at 99. He opined, in terms of causation, it did not matter whether the vehicles touched as it was:

> the move by Ms. Pringle to the right, the sudden move to the right, precipitated a response by Ms. Kajy to the right which took her vehicle onto the shoulder heading it toward the abutment and it was then that there was a sudden correction both by Ms. Pringle and by Ms. Kajy and it was that sudden correction to the left that caused the vehicle to begin to lose control.

Id. at 83-84.

Of course, the record shows defense counsel, through cross examination, challenged the state's expert's opinion. Id. at 102. Although Mr. Kohn attested that the two cars touched, the expert said he found nothing evincing the actual touching of the vehicles. Id. The expert also admitted that none of the pictures evinced the second vehicle's involvement. Id. at 103. The expert also said the dynamics of the crash only show Ms. Kajy's vehicle's motion. Id. at 104. Also, the expert stated he could not point to any physical evidence as to what made Ms. Kajy leave her travel lane sharply. Id. The expert relied heavily on Mr. Kohn's position on the bridge and his ability to judge that Petitioner made a sudden move to the right and the expert

acknowledged that the other witnesses on the bridge did not see the veering of Petitioner's vehicle.   Id. at 104-105.   The expert also testified that Ms. Kajy's SUV, with a higher center of mass, would more likely tip over.   Id. at 107.

In Kuhns v. Sec'y Dep't of Corr., No. 2:08-CV-163, 2011 WL 1085013, at *6 (M.D. Fla. Mar. 21, 2011), this Court recognized:

> "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir.2000) (quoting Burger v. Kemp, 483 U.S. 776, 794, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987)). In finding prejudice, the court must determine that the result of the proceedings would have been different considering "the totality of the evidence before the judge or jury." Berghuis v. Thompkins, —— U.S. ——, 130 S. Ct. 2250, 2265, 176 L.Ed.2d 1098 (2010) (quoting Strickland, 466 U.S. at 695).

Petitioner has failed to demonstrate there was a breakdown in the adversary process that rendered the result unreliable.   She has not shown that failure to call an expert witness was deficient or that, even if deficient, that she suffered prejudice as a result.   Duran v. Walker, 223 F. App'x 865, 875 (11th Cir.) (per curiam), cert. denied, 552 U.S. 874 (2007).   In short, Petitioner has failed to show that "a reasonable probability exists that the outcome of the case would have been different if [her] lawyer had given the

assistance that Petitioner has alleged he should have provided." <u>Moore v.</u>

<u>Sec'y of Fla. Dep't of Corr.</u>, No. 3:07-cv-117-J-34MCR, 2010 WL 1257688, at *8

(M.D. Fla. March 30, 2010) (not reported in F.Supp.2d).

Considering the totality of the evidence before the jury, Petitioner was

driving impaired, and she was a threat to multiple drivers on the road.   Of

import, at sentencing, the trial judge stated:

> I noted in [Petitioner's] statements that – the one statement that really stuck out for me was that Ms. Pringle said I don't believe I was the cause of this accident, and I can say to you after having sat through the trial that **there is overwhelming evidence beyond a reasonable doubt that Ms. Pringle was the cause of this accident**.

Ex. 7 at 225.

Taking into consideration the totality of the evidence, Petitioner has

failed to show that the result of the proceeding would have been different if

counsel had called an expert.   The state presented a wealth of evidence

showing Petitioner was driving impaired and endangering the lives of many

persons as she traveled around town.   She weaved all over the road, ignored

cars with flashers, blowing horns, and veering out of her way as she ran or

nearly ran them off of the road.   Several people called 911 to report her erratic

driving.   Petitioner's blood draw after the accident contained Hydrocodone,

Dihydrocodeine, and Alprazolam.   This chemical cocktail combined with

Petitioner's erratic driving turned out to be deadly for the victim, Ms. Kajy. As noted above, Mr. Kohn, who was driving closely behind Petitioner with his emergency flashers on, saw Petitioner swerve into Ms. Kajy's lane causing Ms. Kajy to react suddenly and steer her car away from Petitioner's car. This caused a chain of events, resulting in the death of Ms. Kajy.

Petitioner cannot satisfy the "contrary to" test of AEDPA review as the state court denied the claim applying the Strickland standard and the appellate court affirmed this decision. Thus, the only questions that remain are whether the court unreasonably applied that principle to the facts of the case or premised its adjudication of the claim on an unreasonable determination of the facts. In this instance, this Court is not convinced of an unreasonable application or an unreasonable determination of the facts.

Indeed, Petitioner has failed to show that the state court unreasonably applied Strickland or unreasonably determined the facts. The state court was objectively reasonable in its inquiry and the 1st DCA affirmed the decision. The 1st DCA's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts. Therefore, ground four is due to be denied.

The 1st DCA affirmed the decision of the trial court applying the Strickland standard of review and denying Petitioner's claim of ineffective

23

assistance of counsel.   Ex. 19.   The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Applying the look-through presumption set forth in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Ground four is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   As such, the Court finds Petitioner is not entitled to habeas relief on ground four of the Petition.

## VIII.   GROUND SIX

In ground six, Petitioner claims her right to due process was violated when the state's evidence failed to support a conviction of guilt.   Petition at 21.   She claims the evidence was insufficient to prove beyond a reasonable doubt every element necessary to convict Petitioner of leaving the scene of an accident involving a death.   Id.   In **ground six (part one)**, she first challenges the conclusion she was involved in a crash.   Id.   She submits there was no evidence on the roadway placing her at the scene of the accident.   Id. at 22.   She asserts she was not involved in a collision with another vehicle, person or object; therefore, she could not be involved in a crash.   Id.   In **ground six (part two)**, she contends, as she was unaware that a crash

occurred, she could not have possibly known of an injury or death of a person as she did not have knowledge of a crash.  Id.  As such, without knowledge of the crash, Petitioner says she could not willfully and intentionally leave the scene of an accident as she was completely unaware of the crash.  Id. at 22-23.  She submits that the holding in State v. Dorsett, 158 So. 3d 557 (Fla. 2015), which opined the statute requires a defendant to have actual knowledge of involvement in a crash to be in willful violation of Fla. Stat. § 316.027 and directed a change to the standard jury instructions, requiring a finding of actual knowledge, not just constructive knowledge, supports her contention.

In considering Petitioner's claim of constitutional deprivation, the Court looks to the state court record.  By amended information, the state charged Petitioner with leaving the scene of a crash involving death.  Ex. 2.  Count two, in pertinent part, charges that Petitioner, on February 27, 2010, "did drive a vehicle which she knew or should have known was involved in a crash resulting in the death of a person[.]" Id.

The court instructed the jury:

> To prove the crime of leaving the scene of a crash the state must prove – should be leaving the scene of a crash involving death, the state must prove the following four elements beyond a reasonable doubt: Sasha Nicole Pringle was the driver of a vehicle involved in a crash resulting in death of a person.

25

**Sasha Nicole Pringle knew or should have known that she was involved in a crash.** Sasha Nicole Pringle knew or should have known of the injury to or death of the person. Finally, Sasha Nicole Pringle **willfully** failed to stop at the scene of the crash or as close to the crash as possible and remain there until she had given identifying information to any police officer investigating the crash.

If the state proves that the defendant **willfully** failed to give any part of the identifying information or **willfully** failed to give reasonable assistance the state satisfies this element of the offense.

Identifying information means the name, address, vehicle registration number and if available and requested the exhibition of the defendant's license or permit to drive.

Reasonable assistance includes caring or making arrangements to carry the injured person to a physician or hospital for medical treatment.

**Willfully means intentionally and purposely**.

Ex. 5 at 47-48 (emphasis added).

The jury returned a verdict of guilty as to count two, finding Petitioner guilty of leaving the scene of a crash involving death. Id. at 65; Ex. 6 at 69. The court adjudicated Petitioner guilty and sentenced her to thirty years in prison for this offense. Ex. 8.

Ground three of Petitioner's amended Rule 3.850 motion will be set forth,

in full, as it is important to consider the breadth of the ground presented to the

state courts:

> Pursuant to Rule 3.850(a)1, the judgment was
> entered or sentence was imposed in violation of the
> Constitution or Laws of the United States or the State
> of Florida.   There was no definition of what a "crash"
> is for purpose of the leaving the scene of the crash
> statute.   As well as what the legislative intent was for
> the phrase "involved in a crash"; therefore the statute
> is ambiguous and vague and not applicable to the
> Defendant's case where there is no proof of a collision,
> which is the common and ordinary meaning of a
> "crash."   Further the statute does not address if the
> standard jury instructions requires [sic] <u>actual</u>
> knowledge of the crash that involved a death, an
> essential element of the crime.

> Supporting FACTS:

> Section 316.027(1)(b) provides that the driver of
> any vehicle involved in a crash occurring on public or
> private property that results in the death of any
> person must immediately stop the vehicle at the scene
> of the crash, or as close thereto as possible, and must
> remain at the scene of the crash until he or she has
> fulfilled the requirements of s. 316.062 (giving
> information and rendering aid).   The Defendant
> allegedly swerved her vehicle towards the victim's
> vehicle and allegedly caused or was responsible for the
> crash and resulting death of the victim.   There was no
> proof of any contact by the Defendant's vehicle with
> the victim's vehicle.   Accordingly the Supreme Court
> has ruled that any vehicle involved in a crash means
> that a vehicle must collide with another vehicle,
> person or object.

Defendant would present to this Court that she had no knowledge of a crash occurring. In order to leave the scene of a crash involving a death or injury one must have knowledge of said crash. When officer T.C. Hall of the Jacksonville Sheriff's Office approached and detained the Defendant, she informed him that she was unaware of the accident as supported in his testimony (T.T. pg. 146-147). Officer Stephen Votava of the Jacksonville Sheriff's Office states in his witness interview that Defendant when asked "If she was in an accident today, she stated No." (exhibit A) Corporal A.C. Bennett also of the Jacksonville Sheriff's Office states in his investigative report from the Defendant's recorder statement that "she did not see the crash occur." (exhibit B) All of these statements support the Defendant's claim that she had no knowledge of a crash.

When the victim lost control of her vehicle, the Defendant was in the far inside lane, the victim was in the far outside lane of a 4 lane bridge. Witness Kohn states he was 2 car lengths behind the Defendant while following her which would have been approximately 20 to 40 feet and that she was already a little bit down the road at the time that the victim's vehicle began to counter-turn. (T.T. pg 73) Witness Kohn further testified that he never saw the "driver of the Honda," Ms. Pringle, "look over toward the wreck." (T.T. pg. 118)

Due to the distance between the Defendant, the victim and the speed at which the vehicles were traveling, and the fact that there was no contact between the two vehicles, there is no possibility that the Defendant had any knowledge of the crash involving a death occurring behind her. In order for the Defendant to willfully violate F.S. 316.027(1)(b) she would have to be aware that an accident had

occurred.   This actual knowledge of the crash is an essential element of the crime.   Defendant did not willfully violate F.S. 316.207(1)(b).

Ex. 14 at 42-44.

In the Memorandum of Law in Support of Defendant's Amended Motion for Postconviction Relief, Petitioner claimed she was not involved in a crash and argued:

> Further, the Defendant would present that in order to be in violation of F.S. 316.027, she needed to have knowledge that a crash that involved a death occurred and that the jury be instructed properly. Here if the Defendant was not involved in a crash as proven above then it stands to reason that the Defendant had no knowledge of a crash that involved a death.   Defendant would give the following in support thereof, *Dorsett v. State*, 158 So.3d 557 (Fla 2015).   *Dorsett* like the Defendant was charged with violation of F.S. 316.027 and like the Defendant, *Dorsett* claimed he did not know an accident occurred until notified by the police.   In the instant case, the Defendant when approached by Officer T.C. Hall, informed him that she was unaware of the accident. *See* Record page 146-147.   Officer Stephen Votava, who also was at the location where Defendant was approached and detained, in his witness interview stat[e]ment reported that when asked "If she was in an accident today, she stated, No" (Exhibit A).   Then we have Corporal A.C. Bennett whom was the lead investigator, did the diagram of the accident, documented and photographed the accident and wrote a detailed investigative report of the accident.   In his report he states "she did not see the crash occur" (Exhibit B).

The Supreme Court in *Dorsett v. State*, 158 So. 3d 577 (Fla. 2015) following a certified question as to if the standard jury instruction should require actual knowledge of the crash answered in the affirmative. The Supreme Court determined that a willful violation of Section 316.207 can only be established if the driver had actual knowledge that a crash occurred.   They further determined that knowledge of the accident is an essential element of the Statute.   In order for the Defendant to be criminally liable under Section 316.027, with leaving the scene, the Defendant either knew or reasonably should have known from the nature of the accident or crash *"misstates the law" Dorsett spura* [sic].   Here if the Defendant's vehicle did not collide with another vehicle, person or object, so she would not have had any reason to have knowledge that a crash had occurred.   Since the Defendant can establish and prove that no crash occurred, she then should have been afforded the proper jury instruction that the State must prove beyond a reasonable doubt that she had actual knowledge of the crash.   Defendant would present to this Court that the element of "involved in a crash" and the jury instruction "Defendant knew [sic] or "Defendant knew or should have known" go hand in hand and Defendant's charge and violation of F.S. Statute 316.027 must be found as improper and should be vacated.   **Further, it should be noted that both these cases were pending during the Defendant filing of said Motion and thereby have standing in this cause.**

Ex. 15 at 21-23.

Respondents submit that Petitioner presented just a state law claim. Response at 38.   Notably, "it is not the province of a federal habeas court to examine state-law questions[.]" Isaac v. Brown, No. 5;10-cv-00252-CAR-CHW,

2016 WL 8679271, at *6 (M.D. Ga. May 25, 2016), <u>report and recommendation</u> <u>adopted by</u> 2017 WL 11490905 (M.D. Ga. Feb. 2, 2017).   As noted in <u>Estelle v.</u> <u>McGuire</u>, 502 U.S. 62, 68 (1991), this Court is limited to deciding whether the Petitioner's conviction violated the Constitution, law, or treaties of the United States.   In the state court, Petitioner claimed her judgment and sentence were imposed in violation of the Constitution or Laws of the United States or the State of Florida.   The 1st DCA affirmed.   Ex. 19.   As suggested by Respondents, while arguably this claim could have been raised on direct appeal, and was not, the circuit court reached the merits of the claim. Response at 38; Ex. 16 at 57-58.

Upon review, in **ground six (part one)**, Petitioner contends the Florida Supreme Court has failed to "completely define the term crash" and there is no evidence of a crash.   Petition at 23.   Further, she claims the state failed to prove the first element, that she was involved in a crash resulting in death because there was no collision.   <u>Id</u>. at 21, 23.   As such, she submits there has been a violation of her due process rights under the Fourteenth Amendment. <u>Id</u>. at 23.

Petitioner exhausted this claim by raising it in her Rule 3.850 motions and appealing the denial of post-conviction relief.   She complains that Florida

has not defined "crash" and there was no proof of any contact between Petitioner's vehicle and that of the victim's vehicle.   Ex. 13 at 11; Ex. 14 at 42.

As far as a definition of crash, the 1st DCA previously held the commonly accepted definitions of the term crash include, "a breaking to pieces by or as if by collision" or "an instance of crashing[.]" State, Dep't of Highway Safety and Motor Vehicles v. Williams, 937 So. 2d 815, 817 (Fla. 1st DCA 2006).   In Williams, the circuit court, in denying post-conviction relief, relied on the holding in State v. Elder, 975 So. 2d 481 (Fla. 2d DCA 2007), a case in which a driver caused another driver to swerve, lose control, drive off the road, crash and die.   In Elder, the court found that although the cars did not collide, the defendant was involved in a crash because her driving caused a crash.   Id. at 483.   "Clearly, a driver of a vehicle that causes a crash is 'involved' in the crash."   Id.

In Gaulden v. State, 195 So. 3d 1123, 1128 (Fla. 2016) (per curiam), the Florida Supreme Court, in interpreting the statute, held that a vehicle involved in a crash means "that a vehicle must collide with another vehicle, person, or object."   Of course, in this instance, Ms. Kajy's moving vehicle rolled over on the road and then collided with the barrier wall of the bridge and water below. Ex. 4 at 52-55.   Thus, there was a crash, unlike the situation in Gaulden where no vehicle was involved in a collision but rather the decedent fell out of

an open car door of a moving vehicle.   See Daugherty v. State, 207 So. 3d 980,

981 (Fla. 5th DCA 2016) (following Gaulden and its requirement that a vehicle

must collide with another vehicle, person, or object, and that a victim, holding

onto a vehicle and then falling to the pavement, does not constitute a crash).

The state circuit court addressed Petitioner's claim on its merits;

therefore, the Court will not find the claim unexhausted and procedurally

defaulted for failure to raise the claim on direct appeal.   See Response at 38.

Also, this Court finds that, although not a model of clarity, Petitioner

adequately presented a claim of constitutional dimension.   Ex. 13 at 11; Ex.

14 at 42.

The circuit court, in denying post-conviction relief, addressed

Petitioner's claim that the statute was unconstitutionally vague because it

lacks a statutory definition for the term "crash."   Ex. 16 at 57.   The court

recognized that Petitioner argued she was not involved in a crash because her

car did not collide with another vehicle or object.   Id.   The court, however,

found the argument without merit.   Id.   The court looked to the comparable

fact pattern in Elder and distinguished Gaulden.   The court noted that

Petitioner caused a crash; therefore, she was involved in the crash.   The court

ruled that being involved in a crash "does not require a defendant's car to

collide with another[.]" Ex. 16 at 57.   The 1st DCA affirmed.   Ex. 19.

To the extent Petitioner is claiming she was deprived of a fair trial in **ground six (part one)**, she has not adequately supported a claim of deprivation of due process of law pursuant to the Fourteenth Amendment to the United States Constitution.   "Cases in [the United States Supreme Court] have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial."   Spencer v. State of Tex., 385 U.S. 554, 563-64 (1967).   This Court has thoroughly reviewed the record.   It demonstrates Petitioner received fair process in the state court proceeding and is not entitled to habeas relief on a deprivation of due process claim as raised in ground six (part one).   To the extent raised in **ground six (part one)**, Petitioner was not deprived of fundamental fairness in her criminal trial; therefore, ground six (part one) is due to be denied.

The 1st DCA affirmed the decision of the circuit court denying Petitioner's claim of a constitutional deprivation.   The state court's ruling was not objectively unreasonable.   Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (per curiam).   Indeed, the state court's ruling was not so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.   Richter, 562 U.S. at 103.

The Court finds the state court's determination is consistent with federal precedent.   The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts based on the evidence presented.   Therefore, the Court denies habeas relief on **ground six (part one)**.

There is more to ground six:   **ground six (part two)**.   In her Petition and Reply, Petitioner suggests she was so impaired, "there was no rational possibility that she even knew an accident had occurred behind her."   Reply at 10.   She states, "the level of drugs in the Petitioner's blood stream was indicative of her severe impairment and inability to rationally process information and react to it."   Id.   In her amended 3.850 motion, Petitioner repeatedly claimed she had no knowledge of a crash occurring.   Ex. 14 at 43. Consequently, she submits there has been a deprivation of her due process rights under the Fourteenth Amendment due to her conviction for leaving the scene of a crash involving death when she was not afforded the proper jury instruction that the state must prove beyond a reasonable doubt that she had

actual knowledge of the crash in order to have a willful violation of the statute by her.

Petitioner exhausted this claim by raising it in her pro se amended Rule 3.850 motion and appealing the denial of post-conviction relief. She adequately presented a claim of constitutional dimension. Ex. 14 at 42, 44; Ex. 15 at 21-23. The court summarily denied Petitioner's amended Rule 3.850 motion as to Petitioner's contention that she should have been afforded the proper jury instruction that the state must prove beyond a reasonable doubt that she had actual knowledge of the crash. Ex. 16 at 57-58. The 1st DCA affirmed. Ex 19.

Of import, in Dorsett, 158 So. 3d at 560-61, the Florida Supreme Court looked to the relevant portion of Florida's hit-and-run statute involving death of a person, subsection 316.027(1)(b), requiring that a driver involved in a crash remain at the scene until the person fulfills the requirements of § 316.062 (provision of reasonable assistance and identifying information), and noting a willful violation is a felony of the first degree. In assessing the law, the court determined "a willful violation can be established only if the driver had actual knowledge that a crash occurred." Id. As such, the court found the attendant duties imposed in the statute are triggered by "actual knowledge of involvement in a crash or accident." Id. at 562 (citation omitted). Thus, the

36

court found that "actual knowledge of the crash" is an essential element of the crime of leaving the scene of a crash, and proof of this is usually established from the surrounding circumstances.   Id. at 563.

Notably, the Florida Supreme Court, in Dorsett, relied on a 1995 decision in State v. Mancuso, 652 So. 2d 370 (Fla. 1995), in which the court opined:

> This Court has previously determined that section 316.027 creates only one crime, the felony of "willfully" leaving the scene of an accident involving injury.  Stanfill v. State, 384 So. 2d 141, 143 (Fla. 1980).  In reaching that determination, this Court implicitly recognized that knowledge of the accident is an essential element of section 316.027, **for one cannot "willfully" leave an accident without awareness that an accident has occurred.**

Mancuso, 652 So. 2d at 371 (emphasis added).

The Supreme Court Committee on Standard Jury Instructions in Criminal Cases, directed by the Supreme Court to render instructions consistent with the holding in Mancuso, issued an instruction that the state had to prove that the driver had actual or constructive knowledge of the injury or death of the person.  See Dorsett, 158 So. 3d at 561.  The Committee missed the mark.  As noted by Florida courts, the standard jury instruction adopted by the Committee for leaving the scene of an accident involving death, the one used by the court in Petitioner's case, "misstates the law]" and "constitutes fundamental error[.]" Cahours v. State, 147 So. 3d 574, 575 (Fla.

1st DCA 2014).   Indeed, how can one willfully leave an accident if there is no awareness that an accident occurred?   As a consequence, the standard jury instruction containing the language "knew or should have known" negates the requirement of actual knowledge of the crash and misstates Florida law.   Id. at 576.

To willfully, intentionally, and purposefully leave the scene of a crash, and then fail to render aid or provide information, a driver must have actual knowledge of the occurrence of a crash.   Id. at 576-77.   As such, "mere constructive knowledge of the crash" does not meet the requirement of the statute requiring willfulness.   Id. at 577.   In Cahours, the Court reversed the conviction, because while some evidence was presented that could demonstrate actual knowledge of the crash, the issue was "hotly contested."   Id. at 577 n.3.

Based on the record of Petitioner's trial, the instruction given in her case misinformed the jury of a contested "essential element" of the crime, the actual knowledge of involvement in a crash.   As the Court must review the entire trial record in addressing the claim raised in ground six (part two), a brief summary of relevant evidence follows.

Christopher Pringle, Petitioner's husband, testified that he and his wife had an argument, and she became upset.   Ex. 4 at 17.   Mr. Pringle thought Petitioner had been drinking based on the look of her eyes.   Id.   He was

38

concerned that she was extremely upset when she got into her blue Honda Civic. Id. at 18-19.   When Petitioner drove away, she crossed the center line a couple of times.   Id. at 20.   Mr. Pringle dialed 911 and reported that his wife was drunk and on Valium.   Id. at 21.   Mr. Pringle described Petitioner as zigzagging back and forth on the I-295 on-ramp.   Id. at 22.

Nina Wendzel, an expert in forensic toxicology, testified that the results of Petitioner's blood test showed Hydrocodone, Dihydrocodeine and Alprazolam (Xanax) in her system.   Id. at 118.   Dr. Bruce Goldberger, forensic toxicologist, attested that the amount was on the high end of therapeutic or in the range where toxicity occurs.   Id. at 132.   He explained that there was a synergistic effect of combining these two drugs, Hydrocodone and Xanax.   Id. at 133.   He described the drugs as "two strong sedative, hypnotic like drugs" which caused intoxication exhibited by what witnesses described as Petitioner's slurred speech, unsteadiness, swaying, lethargy, and bloodshot and watery eyes with dilated pupils.   Id. at 135.

Ms. Melinda Holt testified that Petitioner arrived at her home between 9:00 and 10:00 p.m.   Ex. 3 at 124.   Ms. Holt described Petitioner as looking upset and concerned, with her head down, talking on the phone, when she arrived at Ms. Holt's apartment.   Id. at 125, 127.   When the police arrived five minutes later, Petitioner appeared terrified.   Id. at 126.   Ms. Holt did not

get a chance to ask Petitioner why she was upset because the police arrived. Id. at 127.   Upon inquiry by the police, Petitioner denied knowledge of an accident.   Id. at 146-47.

Officer Stephen Votava, in his sworn statement, said after advising Petitioner of her Miranda[9] rights, he asked Petitioner whether she was in an accident today, and she responded no.   (Doc. 1-1 at 32).   Officer Votava testified at trial, in his opinion, Petitioner was impaired.   Ex. 3 at 136.   He attested that Petitioner told him she had had a fight with her husband.   Id. at 139.   Officer T. C. Hall also testified that when he came into contact with Petitioner, he found her to be impaired.   Id. at 144-45.   Officer Hall observed Petitioner and she had running and smeared makeup on her face, she was visibly upset, she told the officers she had a fight with her husband, and when Officer Hall asked her about the accident, she stated she had no idea about any accident.   Id. at 146-47.

Corporal David Bazinet, an investigator with the FHP, testified he looked for physical evidence and found no physical evidence there was a second car involved in the incident.   Id. at 172.   He saw no evidence of swerving from

---

[9] Miranda v. Arizona, 384 U.S. 436 (1966).

a second car or anything else.  Id.  As far as the victim's vehicle, Corporal

Bazinet described what he found:

> The physical evidence that I observed at the
> scene were in the form of skid marks, what we call just
> the tire marks.  When your tires spin they leave
> marks on the road.
>
> It appeared to me at the time that a vehicle had
> – this particular vehicle we end up finding out at some
> point either lost control or was forced to do what it did
> or what have you and it went off the road and came
> back which is indicative of someone losing control of
> their vehicle.
>
> The marks laid on the road kind of swerved off
> towards the outside of the – the wall to keep the cars
> in and then it overturned.   How I know it overturned
> is there was glass on the ground from the windows of
> the vehicle and then at the leading edge of the wall
> there was a tire mark that was pretty fresh of rubber
> that had – from the tires.   The tires are still spinning
> as this is going on.   They're leaving marks all the way
> across the wall and then – then the vehicle plunged
> into the water.

Id. at 173-74.

Corporal Austin Bennett, a traffic homicide investigator for the FHP,

testified as an expert in the field of traffic reconstruction.   Ex. 4 at 45.   He

said the FHP received a call about the crash at approximately 9:50 p.m.   Id.

He described the physical evidence on the road:

> There are tire scuff marks on the roadway
> leading off to the right paved shoulder in the area that

> the vehicle rolled over at.   Just prior to can you [sic]
> observe the vehicle traveling off the roadway to the
> right shoulder, correct, and go back off again and
> that's when she started rotating trying to overcorrect.

Id. at 47.

Corporal Bennett testified that after examining Petitioner's car, the results were inconclusive as to whether the two cars ever made contact or not. Id. at 58.   He confirmed a strike was not apparent.   Id.   When asked on cross-examination whether he found any physical evidence that a second car was involved in the crash, Corporal Bennett responded "[t]here are no marks from the defendant's vehicle, no, sir."   Id. at 71.   Finally, he attested there was no evidence on the road that a second vehicle fishtailed.   Id. at 72.

George Ruotolo, an expert in the field of traffic homicide reconstruction, said it was possible the vehicles touched, but as far as causation, it did not matter whether the defendant's car did or did not strike the victim's car.   Id. at 99-100.   Mr. Ruotolo attested he found no common contact points between the two vehicles, "not that I could evidence."   Id. at 102.   He testified that none of the photographs taken by the FHP showed evidence of a second vehicle's involvement.   Id. at 103.

Jeffery Tibbetts testified he saw someone driving on I-295 around 9:30, 10:00 p.m., and saw a car weaving across the lanes of I-295 and a car with its

42

flashers on.   Ex. 3 at 55-56.   He attested that he tried to get the Honda driver's attention by blaring his horn.   Id. at 58.   Mr. Tibbetts noted that the driver did not acknowledge him in any way.   Id.   Mr. Tibbetts described the driver as staring straight ahead, seemingly oblivious to what was going on around her, and never looking over when Mr. Tibbetts blew his horn.   Id. at 63-64.   He said, "[s]he never acknowledged, never looked.   She just kind of leaned up against her window and had her arm hanging up on her steering wheel and seemed in her own little world."   Id. at 64.   Mr. Tibbetts said he observed this driving pattern for ten minutes, until he exited.   Id. at 58-59.

A single witness, Mr. Stephen Kohn, testified that he thought the vehicles touched, described as a soft impact.   Id. at 76.   He said Petitioner was driving a vehicle and she was bobbing and weaving all over the road.   Id. at 67.   Mr. Kohn testified he drove behind Petitioner's vehicle and put on his emergency flashers.   Id. at 72-73.

Mr. Kohn described what he observed on the Buckman bridge:

> As we approached the peak of the bridge an SUV came up in the most inside lane being closest to the emergency lane, and if you recall three lanes I was in the third lane.   The Honda was in the second lane and the SUV tried to come up past us, and as the SUV tried to approach the Honda the Honda veered over into her lane and the SUV veered into the emergency lane and the Honda touched the SUV and they both started fishtailing.   The Honda gained control.   The SUV

didn't.   It turned sideways on the bridge.   It flipped
and went right over the side.

Id. at 75.

Other individuals driving behind Mr. Kohn did not see any impact or another vehicle causing the SUV to swerve, or the fishtailing of a second vehicle.   Id. at 200; Ex. 4 at 7-8, 10, 13.   Another witness, Danny Brown, testified he saw the small blue silver car swerve away from the SUV, not towards it.   Id. at 14.   He said he saw a small silverish-blue car swerve from right to left, over closer to Don Williamson's vehicle [a friend that was driving another vehicle on the bridge], "probably further up from Don a little ways suddenly and after that I saw sparks out of the corner of my eye further up near the wall."   Ex. 4 at 10.   Mr. Brown described seeing something that looked like a thrown flashlight.   Id. at 11.   He stopped because he believed someone had hit the wall due to the sparks.   Id.

Mr. Williamson described seeing an SUV snatch to the right.   Ex. 3 at 197.   He then saw the vehicle go out of control, face backwards, and then fly off the bridge.   Id. at 198.   He described the driver as jerking the wheel to the right.   Id. at 200.   Mr. Williamson also stopped his vehicle to render aid.

The state introduced Petitioner's recorded phone conversations from the jail: (1) "For one I didn't hit anybody.   I might have caused the car crash but I

44

didn't hit anybody[;]" (2) "I did not hit anybody.   I – that car pulled to the right and I corrected it and somebody in my blind spot[.]" Ex. 4 at 39, 41.   Petitioner did not take the stand at trial.

Upon review, Petitioner raises a due process claim, a claim of constitutional dimension.   She contends she should not have been convicted upon instructions that allowed for constructive knowledge, rather than actual knowledge of a crash.   Indeed, in Florida, "[a] driver is not guilty unless he had actual knowledge there was a crash and knew—or should have known from the nature of the accident—that there was a resulting injury or death. Pitts v. State, 227 So. 3d 674, 677 (Fla. 1st DCA 2017) (citing State v. Dorsett, 158 So. 3d 557, 560 (Fla. 2015); State v. Mancuso, 652 So. 2d 370, 372 (Fla. 1995)).

If the charge given provides proper statements of the law and was not constitutionally infirm, there is no entitlement to habeas relief.   Ford v. Schofield, 488 F.Supp.2d 1258, 1329 (N.D. Ga. May 11, 2007), aff'd sub nom. Ford v. Hall, 546 F.3d 1326 (11th Cir. 2008).   For example, a mere omission, an incomplete instruction, or some other comparable deficiency is less likely to be prejudicial than a misstatement of law.   Id.   Indeed,

> "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437, 124

S. Ct. 1830, 158 L.Ed.2d 701 (2004). Rather, in order to warrant habeas relief, the Petitioner faces a substantial burden and must establish that the erroneous instruction given by the trial court was so prejudicial that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Kibbe,[10] 431 U.S. at 154, 97 S. Ct. 1730. It is not enough to show merely that the instruction was "undesirable, erroneous, or even universally condemned." Id. Moreover, a challenged instruction should not be viewed in isolation but in the context of the entire charge as well as the entire trial record. Cupp v. Naughten, 414 U.S. 141, 146–47, 94 S. Ct. 396, 38 L.Ed.2d 368 (1973); Parker v. Secretary for the Dep't of Corr., 331 F.3d 764, 779 (11th Cir. 2003) (citing Estelle, 502 U.S. at 72, 112 S. Ct. 475; Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997)). The Petitioner faces an even heavier burden with regard to his claims that the trial court failed to give certain instructions or gave incomplete instructions because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Kibbe, 431 U.S. at 155, 97 S. Ct. 1730; Parker, 331 F.3d at 779.

Ford, 488 F. Supp. 2d at 1329.

In 2010, the relevant Standard Jury Instruction in pertinent part, required: knew or should have known that she was involved in a crash; knew or should have known of the injury to or death of the person; and willfully failed to stop at the scene and render aid or provide identifying information. But the law in Florida provides a driver is not guilty unless she had actual

---

10  Henderson v. Kibbe, 431 U.S. 145 (1977).

knowledge that there was a crash, and she knew or should have known from the nature of the accident that there was a resulting injury or death. Manhard v. State, 282 So. 3d 941, 945 (Fla. 1st DCA 2019), cert. denied, 141 S. Ct. 562 (2020); Dorsett, 158 So. 3d at 560.   See Pitts, 227 So. 3d at 677 ("A driver who willfully leaves the scene of an accident involving death commits a felony."); Mancuso, 652 So. 2d at 371 (willfully leaving the scene of an accident requires actual knowledge of the accident as an essential element).

"Due process, of course, requires that the State prove every element of a criminal offense beyond a reasonable doubt."   Gilmore v. Taylor, 508 U.S. 333, 350 (1993).   Particularly, when the issue of knowledge is hotly contested, there is "constitutional significance" of an incorrect charge to the jury on the elements of a crime:

> It is an inherent and indispensable requisite of a fair and impartial trial under the protective powers of our Federal and State Constitutions as contained in the due process of law clauses that a defendant be accorded the right to have a Court correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence. Such protection afforded an accused cannot be treated with impunity under the guise of 'harmless error'.

Mogavero v. State, 744 So. 2d 1048, 1050 (Fla. 4th DCA 1999) (quoting Gerds v. State, 64 So. 2d 915, 916 (Fla. 1953) (citations omitted)).[11]

On habeas review, this Court is constrained to determine whether the instruction, "viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violated due process.'"  Robinson v. Jones, No. 4:14cv221-RH/CAS, 2016 WL 8313924, at *6 (N.D. Fla. Nov. 22, 2016) (quoting Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (internal quotation omitted)), report and recommendation adopted by 2017 WL 722600 (N.D. Fla. Feb. 22, 2017).   If the instruction, when viewed in light of the entire trial, was so misleading it made the trial unfair, a petitioner would be entitled to habeas relief.  Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997), cert. denied, 523 U.S. 1023 (1998).

A defendant is entitled to a fair trial under the Constitution, not a perfect one.  Jamerson v. Sec'y for the Dep't of Corr., 410 F.3d 682, 689 (11th Cir. 2005) (relying on Del v. Van Arsdall, 475 U.S. 673, 681 (1986)).   The question remains as to whether, after the trial court gave these instructions which

---

11 In Mogavero, 744 So.2d at 1050, the court opined, "the jury . . . might reasonably have been misled to convict him based on the less stringent state of mind standard contained in the jury instructions."   One of the defenses was that the defendant did not knowingly act as a mortgage broker without a license.  Id.  Unlike Petitioner's case, there was substantial evidence that Mogavero knowingly violated the statute at issue.  Id.

misstated the law, and the jury relied on the instructions to convict, Petitioner received a fair trial.

After due consideration, there is grave doubt the error was harmless as there is more than a reasonable possibility that the error contributed to the conviction.   Isaac, 2016 WL 8769271, at *6 (relying on the holding in Trepal v. Sec'y, Fla. Dep't of Corr. 684 F.3d 1088, 1111 (11th Cir. 2012) and Owens v. McLaughlin, 733 F.3d 320, 328 (11th Cir. 2013)).   See Parker v. United States, 993 F.3d 1257, 1265 (11th Cir. 2021) ("[R]elief is proper [on collateral review] only if the ... court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful.") (quoting Davis v. Ayala, 576 U.S. 257, 267-68 (2015)) (internal quotation marks and citations omitted).   Indeed, the federal reviewing court, applying the Brecht v. Abrahamson, 507 U.S. 619 91993) harmless error standard, must ask whether the record is "so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error." Owens, 733 F.3d at 328 (quoting Oneal v. McAninch, 513 U.S. 432, 437 (1995)).

After considering the entire charge and the trial record, the Court is convinced that the misstatement of the law in the instructions so infected the entire trial that the resulting conviction violates due process because the ailing

instruction, concerning a very hotly contested issue - actual knowledge of the crash, misstated the law and allowed for the jury to convict based on constructive knowledge rather than actual knowledge.   See Sanchez v. Sec'y, Fla. Dep't of Corr., 819 F. App'x 675, 678 (11th Cir. 2020) (per curiam) (asking did the instruction infect the entire trial such that the conviction violated due process), cert. denied, 141 S. Ct. 1434 (2021).   The Court finds the record so "evenly balanced" there is more than a reasonable possibility that the error contributed to the conviction.   Thus, the Court is "in grave doubt as to the harmlessness" because the jury instruction allowed the jury to convict Petitioner of conduct that is not proscribed by Florida law.   Considering the trial as a whole, the instruction was so misleading as to make the trial unfair.

In this instance, there was an extreme malfunction in the state criminal justice system which had a substantial and injurious effect or influence in determining the jury's verdict.   Kotteakos v. United States, 328 U.S. 750, 776 (1991).   A dearth of the state's evidence demonstrated Petitioner had no actual knowledge of a crash, including witness statements, physical evidence, and expert testimony.   Also, most of the evidence presented evinced no actual impact between the two vehicles,[12] and if any impact, it was slight to negligible,

---

[12] Although Mr. Ruotolo, the state's expert, testified it was possible the vehicles touched, he explained that from Mr. Kohn's vantage point, it would have appeared as if they touched, but Mr. Ruotolo did not include the touching of the vehicles in his analysis and diagrams.   Ex. 4

leaving no marks or evidence.   The record supports the conclusion that Petitioner was driving in an impaired state, seemingly unaware of the events going on around her as she drove over the Buckman bridge, the site of the crash.   Finally, the crash (the SUV hitting the bridge barrier, flipping over the barrier, and landing on the water), which took place after the victim swerved, over-corrected, and then rolled her vehicle after losing control of the vehicle, occurred behind Petitioner's car based on the testimony of the witnesses.[13] Ex. 3 at 73, 76, 80, 114, 198; Ex. 4 at 11.

The trial court gave an instruction which misinformed the jury of a contested essential element of the crime of leaving the scene of a crash involving death.   Indeed, there is only one crime under 316.027, the felony of willfully leaving the scene of an accident involving death, meaning knowledge of the accident is an essential element of that crime as one cannot willfully leave an accident without awareness that an accident has occurred.   Since the jury was instructed that Petitioner "knew or should have known that she was involved in a crash," the instruction misstated the law, and under these

---

at 91, 99.

[13] Testimony revealed the speed limit on I-295, and in particular, the Buckman Bridge, is 65 miles per hour.   Ex. 4 at 75.   There was no testimony that Petitioner was speeding; the testimony revealed she was traveling with the flow of traffic and continued to do so until she exited.

circumstances, Petitioner was deprived of due process of law when held criminally liable for leaving the scene of a crash and willfully failing to stop at the scene and willfully failing to give identifying information or reasonable assistance.

Under these circumstances, upon review of the entire instruction and the trial court record, the Court will not give deference to the state court's decision denying post-conviction relief on the second part of Petitioner's claim of constitutional deprivation as raised in ground three of her amended post-conviction motion.   Respondents argue that Petitioner's reliance on Dorsett is misplaced because it was the first time the Florida Supreme Court held that "constructive knowledge" was insufficient to convict.   Response at 41.   The Court is not convinced by this argument.   The statute at the time of Petitioner offense and the statute at the time of Dorsett required willfulness, and as related by the Florida courts, willfulness requires knowledge of the crash, without which, there could be no criminal liability for willfully failing to comply with the requirements of the statute to stop, to render aid, and to provide identifying information.   See Mancuso, 652 So. 2d at 371 (knowledge of the accident must be read into hit-and-run statutes for one cannot willfully leave the scene without awareness).

As the Standard Jury Instructions at the time of Petitioner's trial misstated the law, there is a more than a reasonable possibility that the error contributed to the conviction, misleading the jury to convict Petitioner because the instruction given obviated the requirement that the prosecutor prove the essential element that the driver know she was involved in a crash.  This erroneous instruction, when viewed in the light of the entire trial, was so misleading that it made the trial fundamentally unfair, so infecting the proceeding that it resulted in a deprivation of due process of law in violation of the Fourteenth Amendment to the United States Constitution.

Based on all of the above, Petitioner is entitled to habeas relief on **ground six (part two)**.   The Court concludes that the decision of the 1st DCA affirming the denial of post-conviction relief is in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   Under these circumstances, the Court concludes the AEDPA deference is not warranted.  Indeed, the Court will not give deference to the decision of the 1st DCA as the decision was contrary to clearly established federal law.   It did not arrive at its conclusion consistent with Supreme Court and Eleventh Circuit precedent.  See Reutter v. Sec'y for Dep't of Corr., 232 F. App'x 914, 917 (11th Cir.) (per

curiam) (finding the state arrived at a conclusion consistent with Supreme Court and Eleventh Circuit precedent), cert. denied, 552 U.S. 956 (2007).

To the extent the state court utilized the correct governing legal principle, the state court's decision involved an unreasonable application of federal law to the facts of Petitioner's case or an unreasonable refusal to apply the principle to the facts of the case.   This Court will not give deference to the state court's decision as Petitioner has shown that the 1st DCA unreasonably applied clearly established federal law and based its decision on an unreasonable determination of facts considering the entirety of the evidence presented and the charge given in the state court proceeding.   As such, Petitioner is entitled to habeas relief on ground six (part two).[14]

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART AND DENIED IN PART.**

2.     The writ of habeas corpus will be conditionally **GRANTED** as to **ground six (part two)** for the reasons discussed above, within **NINETY (90) DAYS** from the date of this Order, unless the State of Florida initiates new

---

14 Petitioner remains convicted of driving under the influence manslaughter.   Ex. 8.   She is serving a term of fifteen years in prison for that offense.   Id.

54

trial proceedings in state court consistent with the law.   The Court **DENIES with prejudice** grounds one, two, three, four, five, and six (part one).

3.     Petitioner's conviction for leaving the scene of a crash involving death is **VACATED**, and Respondents are directed to forthwith take all action necessary to ensure that the state trial court is apprised of this ruling and that a new trial (or other appropriate disposition) is ordered in an expeditious fashion.

4.     The **Clerk** shall enter judgment conditionally granting relief in favor of Petitioner as to **ground six (part two)**, and in favor of Respondents on all remaining claims and close the case.

5.     The **Clerk** shall send a copy of this Order to the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida.

6.     If Petitioner appeals the denial of her Petition (Doc. 1), **the Court denies a certificate of appealability as to grounds one, two, three, four, five, and six (part one).**[15]   Because this Court has determined that a

---

[15] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

certificate of appealability is not warranted on those grounds, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

7.      Respondents, no later than **December 20, 2021**, shall notify the Court as to the date of the new trial or other disposition of Petitioner's case.

**DONE AND ORDERED** at Jacksonville, Florida, this _21st_ day of September, 2021.

UNITED STATES DISTRICT JUDGE

sa 9/15
c:
Sasha Nicole Pringle
Counsel of Record
Circuit Court (4th Judicial Circuit, Duval County, Florida).

56